IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

```
F I L E D
NOV 18 2011
CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA
```

| | |
|---|---|
| BRYAN S. ROSS, <br> Chapter 7 Trustee for <br> TOTAL REALTY MANAGEMENT, LLC, <br><br> Plaintiff, <br><br> v. <br><br> R.A. NORTH DEVELOPMENT, INC., <br> *et al.*, <br><br> Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    Civil Action No. 1:11cv0684 (GBL/JFA) |

## PROPOSED FINDINGS OF FACT AND RECOMMENDATIONS

This matter is before the Court on a Motion for Sanctions filed by R.A. North

Development, Inc., R.A. North Development I, Inc., Southeastern Land Sales, Inc., Southeastern

Waterfront Marketing, Inc., Southeastern Waterway Sales, Inc., Waterfront Development

Services, Inc., and Waterfront Communities, Inc. ("defendants"). (Docket no. 24). Defendants'

motion seeks non-monetary sanctions and attorneys' fees and costs under Federal Rule of Civil

Procedure 11 against attorneys from Pesner Kawamoto Conway PLC, counsel for plaintiff Bryan

S. Ross, who is the Chapter 7 Trustee for Total Realty Management, LLC ("TRM"). Given that

this is a post-judgment proceeding involving a request for monetary sanctions under Rule 11, the

undersigned magistrate judge is filing with the Court his proposed findings of fact and

recommendations pursuant to 28 U.S.C. § 636(b)(1)(C), a copy of which will be provided to all

interested parties.[1]

---

[1] While the issue does not appear to have been addressed directly by the Fourth Circuit, several other Courts of Appeals have indicated that a magistrate judge does not have authority to enter an order for Rule 11 monetary sanctions. *See Bennett v. General Caster Service of N. Gordon Company, Inc.*, 976 F.2d 995 (6th Cir. 1992); *Alpern v. Lieb*, 38 F.3d 933 (7th Cir. 1994); *Kiobel v. Millson*, 592 F.3d 78 (2d Cir. 2010).

**Procedural Background**

Beginning in 2008, three lawsuits brought by 135 plaintiffs were filed in this Court and

consolidated into one case: *Beth A. Feeley v. Total Realty Management, LLC*, Civil Action No.

1:08cv1212.  Pesner Kawamoto Conway PLC represented 129 of the original 135 plaintiffs

("*Feeley* Plaintiffs")[2] and the consolidated defendants in that case included, among others, R.A.

North Development, Inc., R.A. North Development I, Inc., Southeastern Land Sales, Inc., and

Southeastern Waterfront Marketing, Inc., also defendants in this case.  (*See Feeley*, Amend.

Compl., Docket no. 86).  The *Feeley* Plaintiffs alleged that defendant TRM bought residential

lots in North Carolina from defendants R.A. North Development, Inc., R.A. North Development

I, Inc., Southeastern Land Sales, Inc., and Southeastern Waterfront Marketing, Inc., which it then

sold to them at inflated prices.  (*Id.* at ¶¶ 111-114).  The *Feeley* Plaintiffs also alleged that

defendants R.A. North Development, Inc., R.A. North Development I, Inc., Southeastern Land

Sales, Inc., and Southeastern Waterfront Marketing, Inc. violated the Interstate Land Sales Full

Disclosure Act.  (*Id.* at ¶¶ 368, 429).

On November 20, 2009, the *Feeley* Plaintiffs and defendants filed a Consent Motion for

Entry of Stipulation and Order of Dismissal dismissing all claims brought by the *Feeley*

Plaintiffs against defendants R.A. North Development, Inc., R.A. North Development I, Inc.,

Southeastern Land Sales, Inc., and Southeastern Waterfront Marketing, Inc. with prejudice.

(*Feeley*, Docket no. 297).  The parties' Stipulation and Order of Dismissal was entered by this

Court on November 30, 2009.  (*Feeley*, Docket no. 304).[3]

---

[2] The remaining six plaintiffs (Michael J. Tanner, Joseph P. Quigg, Renee M. Quigg, William K. Warren, Susan O. Warren, and Melissa D. Pilla) were represented by John Forest of Stahl, Forest & Zelloe PC.

[3] The six plaintiffs represented by John Forest of Stahl, Forest & Zelloe PC also filed their Consent Motion for Entry of Stipulation and Order of Dismissal on November 20, 2009 (*Feeley*, Docket no. 298) and it was entered by this Court on November 30, 2009 (*Feeley*, Docket no. 305).

On June 10, 2011, plaintiff, as trustee for TRM, filed his First Amended Complaint to Recover Money ("Amended Complaint") in the United States Bankruptcy Court for the Eastern District of Virginia. (Docket no. 1-1). In the Amended Complaint, plaintiff sought statutory contribution from defendants for TRM's liabilities to the *Feeley* Plaintiffs under 15 U.S.C. § 1709(d). (Docket no. 1-1). On June 24, 2011, defendants R.A. North Development, Inc., R.A. North Development I, Inc., and Southeastern Waterfront Marketing, Inc. moved to withdraw the reference to the Bankruptcy Court and a Consent Order granting the motion was entered on July 7, 2011. (Docket nos. 2 and 6). On July 15, 2011, defendants filed a Motion to Dismiss and to Strike Unfounded Allegations as well as a Memorandum in Support. (Docket nos. 9 and 10).[4] On August 18, 2011, the defendants were ordered to file a supplemental brief identifying the specific paragraphs of plaintiff's Amended Complaint that they requested to be stricken. (Docket no. 20). Defendants submitted their Supplemental Memorandum in Support of their Motion to Strike on August 29, 2011. (Docket no. 21). On September 12, 2011, the Court granted defendants' Motion to Dismiss and denied defendants' Motion to Strike as moot. (Docket no. 22).

## Factual Background

The issues presented in this Motion for Sanctions have their genesis in certain discovery matters and the settlement of the claims asserted against the defendants in the *Feeley* case. As part of that settlement, counsel for the *Feeley* Plaintiffs executed a Stipulation of Facts that was agreed to by defendants' counsel. (Docket no. 26 at Ex. 1). In that Stipulation of Facts, counsel for the *Feeley* Plaintiffs stipulated that they "have fully discovered and become aware of all relevant facts or evidence relating to our clients' purchase of lots" and that "[a]s a result of . . .

---

[4] Upon notification from the office of the Clerk of Court to file each separate motion for relief separately, defendants subsequently re-filed their Motion to Strike Unfounded Allegations and Memorandum in Support as Docket nos. 13 and 14, respectively.

extensive investigative efforts," counsel concluded, *inter alia*, that defendants never sold a lot to any of the *Feeley* Plaintiffs; that defendants never controlled any of the business affairs or activities of TRM; and that TRM was never authorized to contract on behalf of or bind defendants. (Docket no. 26 at Ex. 1, 2-3).

In the Amended Complaint, plaintiff alleged that counsel for the *Feeley* Plaintiffs served a subpoena *duces tecum* on Richard Mace Watts ("Watts"), sales manager, project director, and broker-in-charge at two of the developments at issue in the *Feeley* case, and requests for production on defendants R.A. North Development, Inc. and R.A. North Development I, Inc. seeking communications between Watts, TRM, and others regarding those developments. (Docket no. 1-1 at ¶ 77). Plaintiff further alleged that hundreds of e-mails sent or received by Watts concerning sales of lots in those developments (the "Watts e-mails" or "e-mails") revealed the involvement and knowledge of defendants R.A. North Development, Inc. and R.A. North Development I, Inc. in TRM's land sales to the *Feeley* Plaintiffs and were responsive to the discovery requests. (Docket no. 1-1 at ¶ 78). Plaintiff alleged that the e-mails were not obtained by counsel for the *Feeley* Plaintiffs until eight months after the parties in *Feeley* entered into their settlement agreement, when Watts disclosed the existence of the e-mails to David Binkley, counsel for lot owners in the developments at issue in the *Feeley* case in separate litigation in North Carolina. (Docket no. 1-1 at ¶¶ 79, 80, and 85). Binkley subsequently purchased the e-mails from a third party and provided them to counsel for the *Feeley* Plaintiffs. (Docket no. 1-1 at ¶ 80).

Plaintiff also alleged that the e-mails were material to issues presented in *Feeley*, that they were not available to anyone other than Watts, the defendants, and their counsel until long after the parties in *Feeley* entered into their settlement agreement, and that the *Feeley* Plaintiffs

4

could not have stipulated to each statement in the Stipulation of Facts accompanying the

settlement agreement had the e-mails also been available to counsel for the *Feeley* Plaintiffs.

(Docket no. 1-1 at ¶¶ 83, 84, 86, and 87). Plaintiff alleged that because the Watts e-mails were

withheld improperly, the settlement in *Feeley* was not procured in good faith and therefore

plaintiff was not precluded from seeking contribution from defendants in this action. (Docket

no. 1-1 at ¶¶ 88-90). Plaintiff further alleged that the non-disclosure of the Watts e-mails formed

the basis of the Court's ruling in the *Feeley* Plaintiffs' favor when it granted in part their Motion

to Alter or Amend Judgment under Federal Rule of Civil Procedure 60(b). (Docket no. 1-1 at ¶¶

81-83). In the Order on that Motion, the Court stated that

> (1) Plaintiffs did not receive the evidence [*i.e.*, the Watts e-mails]
> in discovery despite their due diligence; (2) the evidence is
> material; (3) the evidence is not cumulative of other evidence; (4)
> and, with the newly discovered evidence, Plaintiffs may be able to
> satisfy the pleading requirements necessary to state a claim against
> Defendants Bank of America and its trustee, Prlap, Inc., for civil
> conspiracy to defraud.

(*Feeley*, Docket no. 455; Docket no. 29 at Ex. 3).

On July 19, 2011, before responding to the Amended Complaint, defendants' counsel wrote

to plaintiff's counsel and stated that plaintiff had "made serious and unfounded assertions

regarding the conduct" of defendants' counsel in *Feeley*, including that the settlement agreement

executed by the parties in *Feeley* "was 'not procured in good faith' due to an alleged 'improper

withholding' of documents during discovery." (Docket no. 24 at Ex. A). Defendants' counsel

asked that the "unfounded" allegations contained in the Amended Complaint be withdrawn and

advised that if they were not, defendants would "take whatever action may be necessary and

appropriate including, but not limited to, sanctions and other actions against you and your firm."

(*Id.*). Defendants' counsel asserted that before plaintiff's counsel filed the Amended Complaint,

they knew or should have known, *inter alia*, that Watts was not an employee of any of defendants' counsel's clients during the *Feeley* litigation and was not subject to their control; that Watts was represented separately by Scott Hale ("Hale") during the course of discovery in *Feeley*; and that 147 of the 305 e-mails purportedly withheld until after the *Feeley* settlement agreement were in fact produced to counsel for the *Feeley* Plaintiffs by Hale on behalf of Watts prior to settlement. (*Id.*).

On August 10, 2011, defendants' counsel served a Motion for Sanctions on plaintiff's counsel (Docket no. 24 at Ex. B) and on October 6, 2011, defendants' counsel filed the Motion for Sanctions with this Court (Docket no. 24). In addition to any non-monetary sanctions imposed under Federal Rule of Civil Procedure 11(c)(4), defendants seek an award of the attorneys' fees and costs incurred in responding to the adversary proceeding filed by the plaintiff in the Bankruptcy Court, in responding to plaintiff's Amended Complaint, and in pursuing this Motion for Sanctions. (Docket no. 24 at 2-3).

## Proposed Findings

### *The "Safe Harbor" Provision of Federal Rule of Civil Procedure 11*

A threshold issue in any Rule 11 motion is the "safe harbor" provision requiring notice to the offending party and a 21 day waiting period prior to the filing of the motion in which a sanction-worthy argument or assertion may be withdrawn or corrected. Fed. R. Civ. P. 11(c)(2). Citing both binding and persuasive precedent, plaintiff argues that defendants' motion should be denied for failure to comply with the 21 day safe harbor provision of Rule 11.[5] (Docket no. 29 at 16-17). Plaintiff argues that defendants did not specifically identify the allegedly offensive

---

[5] "A motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b). The motion must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets." Fed. R. Civ. P. 11(c)(2).

allegations contained in the Amended Complaint until defendants filed their supplemental

briefing in support of their Motion to Strike on August 29, 2011,[6] and as the case was terminated

on September 12, 2011, plaintiff did not have 21 days to withdraw or "appropriately correct" the

Amended Complaint as required by the Rule. (*Id.*).

A review of the Motion for Sanctions served on plaintiff on August 10, 2011 reveals that

defendants clearly stated that plaintiff's allegations that "R.A. North defendants and their counsel

improperly withheld discovery and procured a settlement in bad faith" violated Rule 11 and that

any claim for contribution was not warranted by existing law or a non-frivolous argument for

extending, modifying, or reversing that law and also violated Rule 11. (Docket no. 24). As

service of defendants' Motion for Sanctions on August 10, 2011 adequately apprised plaintiff of

the purportedly offensive allegations contained in the Amended Complaint, particularly given the

specifically identified paragraphs of the Amended Complaint cited in defendants' Motion to

Strike served on July 15, 2011 (Docket no. 9 at 2-3)[7], the undersigned recommends a finding that

the safe harbor period lapsed on August 31, 2011 and defendants' Rule 11 Motion is ripe for

decision.

*Sanctions under Rule 11*

Under Rule 11 an attorney presenting a pleading to the Court certifies that "to the best of

the person's knowledge, information, and belief, formed after an inquiry reasonable under the

circumstances," the pleading is not presented for an improper purpose, the legal contentions are

---

[6] Defendants served but did not file their Motion for Sanctions on August 10, 2011. (Docket no. 24, Ex. B). The case was terminated 33 days later, on September 12, 2011. Thus, the critical fact is whether plaintiff knew what claims contained in the Amended Complaint required withdrawal or correction on that date, as defendants contend, or on August 29, 2011, the date defendants filed their supplemental briefing in support of their Motion to Strike, as plaintiff contends.

[7] "The Court should strike the allegations set forth in paragraphs 77 through 90, paragraphs 146 through 158, and paragraphs 194 through 207. There is no good faith factual basis for the allegations and the allegations are not alleged to provide a basis for relief in any of the causes of action plaintiff attempts to plead." (Docket no. 9 at 2).

"warranted by existing law," and the factual allegations are supported by the evidence.  Fed. R. Civ. P. 11(b).  When evaluating whether legal or factual contentions are supported by the law, the Court must examine the pleading according to a standard of objective reasonableness.  "At this stage, the inquiry focuses only on whether a reasonable attorney in like circumstances could believe his actions to be factually and legally justified."  *Cabell v. Petty*, 810 F.2d 463, 466 (4th Cir. 1987).  The party moving for Rule 11 sanctions has the burden of proving that there has been a violation of Rule 11; once that burden is met the burden shifts to the responding party to prove that his or her conduct was reasonable.

Fed. R. Civ. P. 11(b)(3) states that counsel represent that "the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery."  Factual allegations fail to satisfy this Rule when they are "unsupported by *any* information obtained prior to filing."  *Brubaker v. City of Richmond*, 943 F.2d 1363, 1373 (4th Cir. 1991); *accord Morris v. Wachovia Securities, Inc.*, 448 F.3d 268, 277 (4th Cir. 2006).

The Advisory Committee note to Rule 11 cautions against "using the wisdom of hindsight" and emphasize that pleadings should be tested "by inquiring what was reasonable to believe at the time the pleading, motion, or other paper was submitted."  Fed. R. Civ. P. 11 Advisory Committee's Note, 97 F.R.D. 165, 199 (1983).  "A fact allegation lacks evidentiary support when it is 'unsupported by *any* information obtained prior to filing.'"  *Vuyyuru v. Jadhav*, 2011 WL 1483725, at *22 (E.D. Va. Apr. 19, 2011) (quoting *Brubaker*, 943 F.2d at 1373).  "To be reasonable, the prefiling factual investigation must uncover some information to support the allegations in the complaint."  *Brubaker*, 943 F.2d at 1373.

Defendants acknowledge that plaintiff's failure to survive defendants' Motion to Dismiss does not render the Amended Complaint subject to sanctions *per se*. (Docket no. 26 at 15). While plaintiff relies heavily on the Court's partial grant of the *Feeley* Plaintiffs' Motion to Alter or Amend Judgment Based on Newly Discovered Evidence That Was Improperly Withheld under Federal Rule of Civil Procedure 60(b) for the proposition that the allegations concerning the settlement agreement and the underlying non-disclosure of the Watts e-mails were made in compliance with Rule 11, the same approach must be taken as to that decision. (Docket no. 29 at 4-5).[8]

In the Fourth Circuit a Rule 11 inquiry must be independent and the outcome of even a dispositive motion does not necessarily indicate (much less dictate) the proper disposition of a motion for sanctions based on the same pleading. *See Miltier v. Downes*, 935 F.2d 660, 663-64 (4th Cir. 1991) (holding that "merely noting that counsel's position was rejected on summary judgment cannot serve as a substitute for the 'reasonably justified' analysis demanded by Rule 11") (citing *Hoover Universal, Inc. v. Brockway Imco, Inc.*, 809 F.2d 1039, 1044 (4th Cir. 1987) (denying a Rule 11 motion for sanctions despite a grant of summary judgment because plaintiff "objectively [had] a glimmer of a chance of prevailing")); *LaVay Corp. v. Dominion Federal Sav. & Loan Ass'n*, 830 F.2d 522, 528 (4th Cir. 1987) (stating that a directed verdict alone does not merit an award of sanctions because even when a Rule 11 violation is shown the allegedly sanctionable party must still be permitted to "demonstrate some reasonable basis for their filings"), *cert. denied*, 484 U.S. 1065 (1988).

---

[8] Defendants argue that plaintiff's reliance on the Court's ruling on the *Feeley* Plaintiffs' Rule 60(b) motion is unfounded, as defendants were not a party to the case at that time. (Docket no. 30 at 5; *see also* Docket no. 29 at Ex. 2 (Plaintiffs' Memorandum in Support of Their Motion to Alter or Amend Judgment Based on Newly Discovered Evidence That Was Improperly Withheld); *Feeley*, Docket no. 449 at 2 (submitting plaintiffs' "Motion to Alter or Amend the Court's August 28, 2009 Memorandum Order [Doc. 215] pursuant to Fed. R. Civ. P. 60(b)(2) or 60(b)(6) as it pertains to [Bank of America] on Count XXII (Civil Conspiracy to Defraud) of the Second Amended Complaint")). Given the independent inquiry undertaken here, however, this point need not be addressed.

Sanctions are mandatory if the Court finds that there was no objectively reasonable basis for the claims; however, "the determination of what [sanction] is 'appropriate' is still a matter left to the sound discretion of the district court." *Cabell*, 810 F.2d at 466. The Rule limits the sanctions available to "what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(4); *see also In re Kunstler*, 914 F.2d 505, 522-523 (4th Cir. 1990) (stating that the primary purpose of Rule 11 is to deter future litigation abuse). "In choosing a sanction '[t]he basic principle . . . is that the least severe sanction adequate to serve the purpose should be imposed.'" *Cabell*, 810 F.2d at 466 (*citing* Schwarzer, *Sanctions Under the New Federal Rule 11-A Closer Look*, 104 F.R.D. 181, 201 (1985)).

A sanction under Rule 11 may include an order to pay a penalty into the Court or to pay the reasonable attorneys' fees resulting from the violation. Fed. R. Civ. P. 11(c)(4). However, the Fourth Circuit has cautioned that Rule 11 "should not blindly be used to shift fees." *Kunstler*, 914 F.2d at 522. A Rule 11 sanction may be imposed on any attorney, law firm, or party responsible for the violation and absent "exceptional circumstances" a law firm must be held jointly liable for the violations of its attorneys. Fed. R. Civ. P. 11(c)(1). After resolving a Rule 11 motion, the Court may award expenses and fees to the prevailing party, "if warranted." Fed. R. Civ. P. 11(c)(2).

### Defendants' Argument

Defendants argue that there is no evidentiary support for plaintiff's allegations that defendants "improperly withheld" the Watts e-mails because plaintiff knew when it filed its Amended Complaint that the e-mails were not in defendants' possession, custody, or control prior to settlement, a fact plaintiff essentially conceded in its opposition to defendants' Motion to Strike. (Docket no. 26 at 5-7; *see also* Docket no. 17 at 5). Defendants argue that this

concession vitiates any basis for alleging as fact that defendants withheld the e-mails and any

"legitimate inference" that might be drawn from defendants' conduct in the course of prior

litigation. (Docket no. 26 at 7). Defendants also argue that plaintiff's attempt at ambiguous

pleading in its Amended Complaint is neither consistent with Rule 11 nor persuasive. (Docket

no. 30 at 3-4). Defendants assert that plaintiff failed to specifically identify facts whose

development required investigation or discovery in compliance with Rule 11 and that there can

be no mistaking plaintiff's pleading **as fact** in paragraph 86 of the Amended Complaint that the

undisclosed e-mails at issue here were in the possession of defendants and their counsel, an

allegation that defendants vehemently assert has no basis. (Docket no. 30 at 3-4).

Defendants further contend that plaintiff's allegations are contradictory given the fact that

232 of the 434 e-mails allegedly obtained after the settlement agreement was executed were in

fact produced in the *Feeley* case prior to the settlement.[9] (Docket no. 26 at 8; *see also* Ex. 2,

Declaration of Kristin Marie Rhodes in Support of Reply Memorandum in Support of Motion to

Strike). Thus, plaintiff's allegations of withheld discovery are, at best, a "half-truth." (*Id.*).

Defendants next argue that, as there is no factual basis to allege that the Watts e-mails

were "improperly withheld" by **them,** there is no basis for plaintiff's allegation that the

settlement in *Feeley* "was not procured in good faith." Defendants assert that this is merely

plaintiff's attempt to "end-run" the settlement agreement's bar to contribution claims under

---

[9] In defendants' counsel's July 19, 2011 letter to plaintiff's counsel first addressing the allegations in plaintiff's Amended Complaint, 305 responsive e-mails are identified, 147 of which "were produced to [plaintiff's counsel] by Mr. Hale on behalf of Mr. Watts prior to the settlement." (Docket no. 24 at Ex. A). However, in their memorandum in support of their Motion for Sanctions, defendants state that prior to the settlement Hale produced 148 of the 302 e-mail chains, or 232 of the 434 individual e-mails, "over one-half" of the e-mails. (Docket no. 26 at 8). This count is corroborated by the Declaration of Kristin Marie Rhodes in support of defendants' Motion to Strike attached to defendants' Memorandum in Support of Motion for Sanctions (Docket no. 26 at Ex. B) and plaintiff's counsel concede in their opposition that the number of **undisclosed** e-mails is 202 (Docket no. 29 at 4, 8, 9, and 19). Thus, it is established that 202 e-mails responsive to the *Feeley* Plaintiffs' discovery requests were not disclosed prior to the execution of the settlement agreement in that case.

Section 8.01-35.1 of the Virginia Code.[10] (Docket no. 26 at 9). Given the lack of any

evidentiary basis to allege defendants' improper conduct, defendants assert that there can be no

factual support for plaintiff's allegations of "bad faith," as that requires a showing of collusion

between the settling parties or fraud in inducing the agreement. (*Id.*). According to the

defendants, absent a showing of collusion or fraud (*i.e.*, "bad faith"), there can be no removal of

the settlement agreement's bar to contribution claims and plaintiff's "second shot" at defendants

is insupportable. (Docket no. 26 at 9-10). Further, defendants argue that plaintiff had no

evidentiary basis to allege that defendants could be liable for contribution as he knew that

defendants could not be liable for rescission or revocation of the contracts in dispute in *Feeley*

and that these and other allegations (including plaintiff's claims based on an agency relationship

between defendants and TRM) were made after the *Feeley* case effectively provided plaintiff "a

prefiling investigation". (Docket no. 26 at 15-16).

Moreover, defendants argue that the law on good/bad faith settlements and their effects is

well-settled. (Docket no. 26 at 10). Given that Watts was not a party to *Feeley* and not a party to

the settlement agreement, any nondisclosure attributable to him is wholly unrelated to the

settlement agreement between defendants and the *Feeley* Plaintiffs.[11] (*Id.*). Since there is no

evidentiary support for the allegations contained in the Amended Complaint concerning these

defendants' pre-settlement conduct, defendants argue that plaintiff had no legal basis for those

allegations and should therefore be subject to sanctions on that basis, as well. (*Id.*).

---

[10] Section 8.01-35.1 reads in pertinent part: "When a release or a covenant not to sue is given in good faith to one of two or more persons liable for the same injury to a person or property, or the same wrongful death . . . [i]t shall discharge the person to whom it is given from all liability for contribution to any other person liable for the same injury to person or property or the same wrongful death."

[11] In his opposition, plaintiff argues that there is evidence to suggest a "nexus" between Watts, Hale, and defendants that belies defendants' arguments that Watts and Hale were wholly independent and free of suspicion in the matter of the undisclosed e-mails. (Docket no. 29 at 11-16).

Defendants next cite four instances that they assert constitute a "pattern of misbehavior." (Docket no. 26 at 11). First, defendants point out plaintiff's concession that it did not know whether or not defendants possessed the e-mails plaintiff alleges were withheld. (*Id.*). Second, defendants point to plaintiff's assertion in its opposition to defendants' Motion to Strike that defendants had some control over Watts, and thus some unexercised ability to control the e-mails' disclosure. (*Id.*). Defendants argue that at the time the Amended Complaint was filed the plaintiff knew Watts was represented by separate counsel in the *Feeley* case, and that through that counsel, defendants actually authorized Watts to disclose all responsive e-mails and documents to plaintiff, even if they contained confidential information. (Docket no. 26 at 11-12). Third, defendants assert that plaintiff deliberately misrepresented the substance of the settlement agreement to the Court in his opposition to defendant's Motion to Strike, in particular the Virginia Code provision governing the agreement that bars contribution claims against settling defendants. (Docket no. 26 at 12-14). Finally, defendants assert that plaintiff's Amended Complaint (which defendants state "lifts" the allegations from the complaint filed in *Feeley*) directly contradicts the Stipulation of Facts agreed to by the parties at settlement. (Docket no. 26 at 14-15).

## Plaintiff's Opposition

Plaintiff first asserts that the undisclosed Watts e-mails were material to the issues in *Feeley* as evidenced by the Order granting a Rule 60 motion as to Bank of America, and that the withholding of those e-mails resulted in the *Feeley* Plaintiffs' agreement to the Stipulation of Facts signed as part of the settlement agreement. (Docket no. 29 at 7-10). Plaintiff thus concedes that the allegations in its Amended Complaint are inconsistent with the Stipulation of Facts. (*Id.*). Plaintiff further asserts that given the conceded ignorance of exactly **who** failed to

13

disclose the e-mails, its Amended Complaint was intentionally ambiguous and nowhere contains the allegation that **defendants** improperly withheld the e-mails.[12]  (Docket no. 29 at 7-8).

Plaintiff maintains that the allegations in the Amended Complaint "have evidentiary support or at least such contentions would likely have support upon further inquiry" and that the purpose of including those allegations was not to impugn defendants or their counsel but to demonstrate that the settlement agreement was not procured in good faith and therefore did not bar contribution from defendants. (Docket no. 29 at 16-18).  In response to defendants' arguments concerning the contribution bar, plaintiff argues that the non-disclosure of the e-mails that formed the basis for the *Feeley* Plaintiffs' agreement to settle the claims in that case is a sufficient basis to remove the bar and allow contribution from defendants and that he need not allege fraud or collusion to prevail on that issue.  (Docket no. 29 at 18-20).

Finally, plaintiff argues that there is no repetitive course of improper behavior in need of deterrence through sanctions, and that the evidence of documents being withheld and the materiality of those documents in the *Feeley* case provided a good faith basis for the lawsuit filed by plaintiff.  (Docket no. 29 at 20-22).

### Analysis

Defendants' contentions here are basically three-fold: (1) plaintiff's counsel had no factual basis for alleging that these defendants and their counsel improperly withheld the Watts e-mails; (2) as no e-mails were improperly withheld by defendants, there was no fraud or collusion perpetrated in the execution of the settlement agreement by defendants and plaintiff's claim for contribution against defendants has no legal basis; and (3) plaintiff's conduct in this

---

[12] The difficulty with this argument, as discussed below, is that plaintiff alleges in the Amended Complaint that the Watts e-mails were obtained or available to the defendants and their counsel (¶ 86), that document requests were served on the defendants that required the production of those e-mails (¶¶ 77, 78), and that notwithstanding those proper discovery requests, the defendants did not produce the e-mails in the *Feeley* litigation (¶ 79).

and other instances demonstrates a pattern of conduct for which sanctions are an appropriate deterrent.

First, it is uncontested that not all of the Watts e-mails responsive to the *Feeley* Plaintiffs' discovery requests were produced prior to the execution of the settlement agreement in that case. Defendants assert that "over one-half" of the responsive e-mails were produced to counsel for the *Feeley* Plaintiffs – however, this necessarily means that less than one-half of those e-mails were not produced. And, as the materiality of at least some of the e-mails is uncontested, this fact forms some basis for plaintiff's assertion in the Amended Complaint that but for that non-production, the *Feeley* Plaintiffs would not have entered into the Stipulation of Facts accompanying the settlement agreement in that case.

While there is no question that all of the Watts e-mails were not provided to the *Feeley* Plaintiffs prior to the execution of the settlement agreement in that case, the issue presented in this Motion for Sanctions is whether the allegations set forth in the Amended Complaint against these defendants (and not Watts) "have evidentiary support." The allegations at issue were set forth as facts and they were not specifically identified as allegations that "will likely have evidentiary support after a reasonable opportunity for further investigation or discovery" as provided for in Rule 11. For example, when paragraphs 79 and 86 of the Amended Complaint are read together it appears that plaintiff is alleging that the Watts e-mails were available to the defendants and their counsel before the settlement agreement was executed (Docket no. 1-1 at ¶ 86) and that despite proper discovery requests that called for their production, they were not produced by the defendants (Docket no. 1-1 at ¶ 79). However, there was no evidentiary support for the allegation in paragraph 86 that the e-mails were obtained or available to **these defendants** and therefore there was no evidentiary support for any allegation that **these defendants** failed to

produce the e-mails.  There does appear to be sufficient evidentiary support for the allegations that **Watts** had access to the e-mails and that he did not produce the e-mails in response to the subpoena served on him.  However, that does not justify including these defendants or their counsel in the same allegations with Watts without sufficient evidentiary support for the allegations asserted against them.  At best, plaintiff should have specifically identified these allegations against the defendants as likely having evidentiary support after a reasonable opportunity for further investigation and inquiry.

Defendants strongly assert that any non-disclosure is wholly un-attributable to them given the absence of an employer-employee or principal-agent relationship between them and Watts at the time as well as Watts's retention of separate counsel (Hale), and there has been nothing provided to the Court by the parties in these pleadings that would establish otherwise. However, there is some support for an inference that a "nexus" existed between Watts, his counsel, and counsel for defendants that could possibly give a reasonable basis for making an allegation that upon further investigation and inquiry evidentiary support may be obtained.

Both plaintiff and defendants attached correspondence from Hale to their moving papers, including a July 10, 2009 letter to counsel for the *Feeley* Plaintiffs objecting to the subpoena *duces tecum* issued to Watts stating in one instance that "all the requested information can be obtained from R.A. North Development, Inc. and related entities that are parties to the lawsuit" but then stating that "Watts will produce responsive, non-privileged or protected e-mails, which are the only documents that are possibly not within the possession, custody or control of a party to the action." (Docket no. 26 at Ex. 3; Docket no. 29 at Ex. 10).  Also attached is a July 14, 2009 e-mail to Henry F. Brandenstein, Jr., counsel for defendant Southeastern Waterfront Marketing, Inc., advising Brandenstein that Watts intended to produce e-mails, advising him that

some of the information they contained might be subject to agreements between Watts and defendants, and requesting that Watts be released from claims arising out of his production (Docket no. 26 at Ex. 4; Docket no. 29 at Ex. 11) and a July 29, 2009 e-mail to plaintiffs' counsel advising her that Brandenstein did in fact give Watts authority to produce e-mails to the *Feeley* Plaintiffs provided they were treated as confidential under a protective order (Docket no. 26 at Ex. 5; Docket no. 29 at 13). In addition, attached to plaintiff's opposition is an October 30, 2009 e-mail cover letter to counsel for the *Feeley* Plaintiffs accompanying "additional, non-objectionable, non-privileged documents (bates-stamped Watts 3339-4244) being produced" by Watts, copied to Brandenstein. (Docket no. 29 at Ex. 14). While inconclusive, it appears from this correspondence that Brandenstein – counsel for one of the defendants in *Feeley* also named here – and Watts's counsel communicated with each other concerning the latter's dealings with counsel for the *Feeley* Plaintiffs concerning the production of information in Watts's possession.

Notwithstanding the obscurity and attenuated nature of the relationship between Watts, Watts's counsel, counsel for defendants, and counsel for the *Feeley* Plaintiffs, and the underlying discovery dispute that gave rise to the allegedly offensive allegations in plaintiff's Amended Complaint in this case, it cannot be said that upon further investigation those allegations might not have evidentiary support given the existence of that relationship. But given the serious nature of those allegations (*i.e.*, willful failure to comply with discovery obligations), plaintiff should have been more specific in making those allegations against these defendants. While the allegations as stated in the Amended Complaint may have been appropriate as to Watts (as there is evidence that he was in possession of the withheld documents), they are not appropriate as to these defendants as there is no "evidentiary support" for those allegations against these defendants or their counsel.

Notwithstanding plaintiff's failure to plead the factual allegations in the Amended Complaint properly, the undersigned recommends a finding that sanctions are unwarranted for this improper pleading. The manner in which the allegations were asserted -- that is as fact and not based on information and belief -- is problematic but should not give rise to an award of sanctions given that it cannot be said that those allegations were "unsupported by *any* information obtained prior to filing" *Brubaker*, 943 F.2d at 1373.

The next issue presented in this Motion for Sanctions is whether the alleged non-disclosure of e-mails in discovery can qualify as not "in good faith" under the Virginia statute governing the *Feeley* parties' settlement agreement.[13] If it does, plaintiff's claim for contribution against defendants in this case is not necessarily barred by that agreement and thus plaintiff may have a reasonable basis for asserting that claim.

Citing *Dacotah Mktg. & Research v. Versatility*, 21 F. Supp. 2d 570 (E.D. Va. 1998), defendants persuasively argue that the Virginia Supreme Court has interpreted "good faith" under Virginia Code Section 8.01-35.1 as the absence of either collusion between the settling parties or fraud in the inducement of the settlement agreement. (Docket no. 26 at 9). In opposition, plaintiff responds that a plain-text reading of the statute necessarily means the bar is lower; "good faith" is not synonymous with "lack of collusion" or "lack of fraud," and thus the legislature's choice of the phrase "good faith" connotes a lesser standard. (Docket no. 29 at 18). Plaintiff further argues that *Dacotah* is inapposite both on its facts and because it wrongly assumes that if the facts of this case were before a Virginia court today it would find that "good faith" and "lack of collusion" or "lack of fraud" are synonymous. (Docket no. 29 at 19).

---

[13] The discussion concerning the "good faith" settlement issue assumes that the defendants were in some way responsible for the conduct complained of by the plaintiff – an assumption that is discussed in detail above.

In *Dacotah*, the Court recognized that the good faith required by Section 8.01–35.1 is "an unsettled question of Virginia law." 21 F. Supp. 2d at 570. Noting that the statute derives from Section 4 of the Uniform Contribution Among Tortfeasors Act ("UCATA") as adopted in several jurisdictions, and that its language "generally tracks" that of Section 4, the Court went on to state that the good faith requirement "reflects UCATA's significant ancillary goal of preventing collusion and thereby reasonably ensuring a fair distribution of responsibility for a plaintiff's damages among all tortfeasors." *Id.* at 575. In rejecting the "reasonable range" rule of "good faith" in favor of the "collusion or other tortious conduct" standard, the Court cited other state courts' interpretations of UCATA, the structure of Section 8.01-35.1, and other definitions of "good faith" in Virginia law, including the Virginia Supreme Court's holding that "if the release executed by the insured was in good faith, without fraud or collusion, it is binding on the plaintiff," for the proposition that a settlement made in good faith is a settlement made in the absence of fraud or collusion. *Id.* at 575-578 (*citing Provident Fire Ins. Co. v. Union Trust Corp.*, 195 Va. 415, 421 (1953)).[14] In *Dacotah*, the Court ultimately determined that the release at issue was not given in "good faith" as "the principal purpose of the release [was] to facilitate a collusive alliance against a non-settling tortfeasor." *Id.* at 579.

Notwithstanding its instructiveness on the question presented, *Dacotah* is factually distinct from the instant case, and it appears from a diligent review of both persuasive and binding case law that non-disclosure of material, discoverable information prior to the execution of a settlement agreement as not "good faith" under Virginia Code Section 8.01-35.1 is a matter

---

[14] Lower courts in Virginia have addressed this issue as well. *See, e.g., Bowers v. City of Richmond*, 2009 WL 7388864, at *2 (Va. Cir. Ct. 2009) (finding "the authorities on the matter of good faith mentioned in Va.Code § 8.01–35.1 and on which defendants argue a release by virtue of the settlement agreement entered into with the former defendants to be rather scant" and "the reasons advanced by the defendants based on the terms of the settlement . . . insufficient to find no good faith"); *Fairfax Radiological Consultants, P.A. v. My Q. Bui*, 2002 WL 34463989, at *3 (Va. Cir. Ct. 2002) (examining various interpretations of the "good faith" provision of Section 8.01-35.1 in this and other jurisdictions and concluding that there was no collusion between the settling parties to injure the plaintiff and thus the settlement agreement was executed in "good faith").

of first impression. Given this lack of clear precedent, it is objectively reasonable that a good faith legal argument can be made that such non-disclosure, while perhaps not "collusive," may well be "tortious" conduct inconsistent with the good faith requirement under Section 8.01-35.1. Thus, it cannot be said that plaintiff's claim that the settlement agreement was not procured in "good faith" as a result of the non-disclosure of the Watts e-mails is legally unjustifiable (assuming a connection with the non-disclosure and the defendants) and not amenable to a non-frivolous argument for extending or modifying existing law.

Finally, the undersigned recommends a finding that the evidence presented is insufficient to support defendants' contention that plaintiff's previous course of conduct in this case warrants sanctions for the purpose of deterring similar future conduct.[15] Plaintiff has admitted that he does not know whether or not the defendants possessed the e-mails allegedly withheld and argues that the Amended Complaint does not specifically allege that the defendants or their counsel breached a duty to disclose. (Docket no. 29 at 7). A close reading of the Amended Complaint reveals that plaintiff included the defendants and their counsel in the same allegations with Watts concerning the duty to disclose without any differentiation. Given that those allegations list a number of persons together with an "and" and not an "or," one must consider the allegations as being made against each person. However, in light of the evidence suggesting a relationship between defendants, Watts, and Watts's counsel concerning the production of documents, there would have been a basis to assert those allegations on information and belief. Similarly, the argument in an opposition brief that defendants may have had some "control" over Watts or his counsel cannot form the basis for an award in this Motion for Sanctions since it too

---

[15] While some of these issues were not presented in the Motion for Sanctions served by defendants on August 10, 2011 and therefore the safe harbor provision would preclude them from being an independent basis for an award of sanctions, they can be considered in the context of a persistent course of conduct consideration in deciding whether to award sanctions for items presented in the Motion for Sanctions.

had some reasonable basis given the communications between defendants' counsel and Watts's counsel concerning Watts's production of documents. Finally, given that non-disclosure of the Watts e-mails is the allegedly "but for" cause of the *Feeley* Plaintiffs' entry into the Statement of Facts and settlement agreement, it is not surprising that the Amended Complaint directly contradicts the Stipulation of Facts agreed to by the parties in connection with that agreement, including the *Feeley* Plaintiffs' statements concerning the *Feeley* defendants' relationship – a relationship only fully revealed **after** production of the Watts e-mails.

### Recommendation

For these reasons, the undersigned recommends a finding that defendants have not carried their burden to prove that there has been a violation of Rule 11 and it is therefore the recommendation of the undersigned that defendants' Motion for Sanctions be denied.

### Notice

The parties are notified that objections to these proposed findings of fact and recommendations must be filed within 14 days of service of these findings of fact and recommendations in accordance with 28 U.S.C. § 636(b)(1)(C) and a failure to file timely objections waives appellate review of the substance of these findings of fact and recommendations and waives appellate review of any judgment or decision based on these findings of fact and recommendations.

Entered this **18** day of November, 2011.

/s/

John F. Anderson
United States Magistrate Judge
John F. Anderson
United States Magistrate Judge

Alexandria, Virginia

21